UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEROME TOOKES,

    Defendant.
_____/

CRIM. CASE NO. 17-20416

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

ORDER
FINDING BY A PREPONDERANCE OF THE EVIDENCE THAT DEFENDANT
VIOLATED SUPERVISED RELEASE CONDITIONS 1 AND 2

In finding, by a preponderance of the evidence, violations of supervised release conditions numbered 1 and 2, the Court relies upon the evidence lawfully discovered by a law enforcement warrantless search at the 19368 Andover Street residence, and the testimony and exhibits introduced at the April 18, 2018 evidentiary hearing. The Court finds that the Government has met its burden to support an exception to the search warrant requirement based upon testimony and evidence introduced at the evidentiary hearing on April 18, 2018. The Court finds that the evidence supports its application of the exigent circumstances exception and/or emergency aid exception to the search warrant requirement. The Court does not find that the police "manufactured" the applicable exception(s) to the search warrant requirement.

1

The following quotations from relevant Supreme Court decisions inform the Court's ruling:

*Kentucky v. King*, 131 S. Ct. 1849 (2011).

> It is a basic principle of Fourth Amendment law, that searches and seizures inside a home without a warrant are presumptively unreasonable. At 1856 (citation omitted).

> One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment. *Id.* (citation omitted).

> This Court has identified several exigencies that may justify a warrantless search of a home. Under the "emergency aid" exception, for example, officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Id.* (citation omitted).

> Police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect. And [t]he need to prevent the imminent destruction of evidence. *Id.* (citation omitted).

> Over the years, lower courts have developed an exception to the exigent circumstances rule, the so-called "police-created exigency" doctrine... [L]aw enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency for themselves. *Id.* at 1857 (citation omitted).

> Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain. *Id.*

> Our cases have repeatedly rejected a subjective approach, asking only whether "the circumstances, viewed *objectively*, justify the action." .... Indeed, we have never held . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." *Id.* at 1859 (citation omitted).

We have noted that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." The reasonable forseeability test would create unacceptable and unwarranted difficulties for law enforcement officers who must make quick decisions in the field, as well as for Judges who would be required to determine after the fact whether the destruction of evidence in response to a knock on the door was reasonably forseeable based on what officers knew at the time. *Id.* at 1860.

*Michigan v. Fisher*, 130 S. Ct. 546 (2009)

Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception. *Id.* at 549 (citation omitted).

The test . . . whether there was "an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger." *Id.* (citation omitted).

*Brigham City, Utah v. Stuart*, 126 S. Ct. 1943 (2006)

The officer's announcement of his presence was at least equivalent to a knock on the screen door. . . . Under these circumstances, there was not violation of the Fourth Amendment's knock-and-announce rule. *Id.* at 1949.

The required probable cause supporting entry in the instant case was not based upon events remote in time. Literally, the probable case supporting entry into the house on Andover on August 18, 2017 was based upon the shooting at that house the night before, August 17, 2017, <u>and</u> the shootings occurring on August 18, 2017 one block away and extending to Andover. Indeed, the August 18, 2017 video shows gun smoke under the Andover streetlight. Indeed, the testimony of Defendant's brother Jerrard Tookes and neighbor Roxanne Mauro that they saw two heavily armed individuals entering that

3

Tookes' house, (Jerrard Tookes, April 18, 2018, Sup. Rel. Vio. Hearing TR. P.101), after Defendant had been there 15 minutes (*Id.* TR. P. 102), and just before the police arrived, supports the exigent circumstances police entry. Mauro testified she heard gunshots and then saw the two individuals enter the Tookes' home. (Mauro, Hearing P.121) Jerrard Tookes also testified that there is lots of drug dealers in this area (TR. 123) as did Officer Reardon. (TR. P.11). Officer Reardon's audio/video camera established that he shouted "Police, open the door," multiple times before entering the locked door. He could hear noises in the house but noone came to the door. (TR. P.13)

Thus, the Court finds that warrantless entry was supported by exigent circumstances, and that upon entry there were significant risks facing the police: (1) the danger of being shot, (2) the risk that evidence of criminal activity was being destroyed, and (3) the potential harm to possible third parties in the house, given the shootings at the house on August 17, 2017, and the close-by shootings on August 18, 2017. The Court finds credible Officer Reardon's testimony that the prime reason for entry was to preserve the life of potential victims of shootings, (TR P.27) – someone could be injured or dead. (TR. P.12) This is certainly bolstered by the uncontested fact that the Andover house had been shot up the previous night. Once inside, the protective sweep of the house was supported by the police immediately seeing ammunition and a gun magazine in plain view on the front room table.

The Court further finds credible Officer Reardon's testimony that the police found

Defendant in a bathroom, with an empty baggie sticking out of his pocket, and with recently placed wet money in the toilet tank. (Reardon, Pp. 19-20). There was no refuse in the toilet bowl. (TR. P. 51). The Court also credits Officer Reardon's testimony that he looked in the toilet tank because people put guns and contraband in there. (Reardon, P.55).

The Court also credits Officer Reardon's testimony that the police found, in the bedroom next to the bathroom, an AK47 assault rifle under the mattress, and a handgun under a mattress in another bedroom, across from the bathroom, where an individual was found under the bed. (Reardon Pp. 19-20)

The Court finds, by a preponderance of the evidence that Defendant Jerome Tookes is guilty of the following supervised release violations:

(1) Defendant shall not commit another crime.

> The Court finds by a preponderance of the evidence that on August 18, 2017, Defendant, a convicted felon, was found in his family's residence which contained boxes of ammunition in plain view. It is a crime for a convicted felon to have possession or constructive possession of ammunition. Here the boxes of ammunition and a magazine were in plain view on the table at the entrance inside the house.

(2) Defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony unless granted permission to do so by the Probation Officer.

The Court finds by a preponderance of the evidence that two of the other occupants of the Tookes' residence on August 18, 2017 were convicted felons. (Exh. 2, Officer Reardon's Report, P.2. Also TR. P. 17 - Reardon) The Court finds that these two individuals were not trespassers who "just happened" to enter the house carrying all the ammunition that was found on the front room table, and the firearms found hidden in other places within the house. Indeed, the police found the television on, and the kitchen light was on, with one felon in the kitchen. The Court finds credible Officer Richard Reardon's testimony that Defendant Tookes told him that I stopped by the house to use the bathroom and pick up some clothes. (TR. Pp. 40-41). The Court does not find credible the testimony of Jarred Tookes that Defendant said he just stopped by to get Grandma Tookes' items. (TR. P. 99). Further the Court finds likely, given the evidence at the hearing, that the noise that the officers heard after shouting multiple times: "Police, open the door," was Defendant Tookes and the other two felons in the house, scurrying around and hiding/destroying contraband.

(3) Defendant has admitted this violation: that he used controlled substances.

(4) Defendant shall not commit a crime, relating to a pistol found on June 28, 2017.

The Court concludes that as to Violation #4, there has not been established by a preponderance of the evidence that he possessed a hand gun on June 28, 2017.

Thus, the Court finds by a preponderance of the evidence that Defendant Jerome Tookes has violated supervised release conditions 1, 2, and that Defendant has admitted violating condition 3.

SO ORDERED.

DATED: 5-11-18

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE